[Criminal No. 530.   Filed January 23, 1923.]

[211 Pac. 866.]

## W. B. CASTON, Appellant, v. STATE, Respondent.

1. CRIMINAL LAW — VERDICT OF JURY CONCLUSIVE IF TRIAL OTHER-
   WISE REGULAR.—Verdict of a jury on the facts in a criminal
   prosecution is conclusive if the trial was otherwise regular.

2. ASSAULT AND BATTERY — TO JUSTIFY RIGHT OF SELF-DEFENSE
   AGAINST ASSAULT, APPREHENSION OF DANGER MUST BE SUCH AS

WOULD INCITE FEAR OF REASONABLE PERSON.—To justify one's right of defense against an assault, the rule is that the apprehension of danger must have been such as would have incited the fears of a reasonable person.

3. ASSAULT AND BATTERY — RULE JUSTIFYING DEFENSE AGAINST ATTACK STATED.—Under Penal Code of 1913, sections 180, 181, where a person has reasonable grounds to apprehend a design to do him great bodily injury, and there appears imminent danger of such a design being accomplished, he may defend himself and use all necessary force to that end; he cannot, however, from bare fear of receiving such bodily injury justify his attack, but the circumstances must be sufficient to excite the fears of a reasonable person, and he must have acted under the influence of such fears alone.

4. ASSAULT AND BATTERY — INSTRUCTION HELD ERRONEOUS AS MAKING THE JUDGMENT OF JURY STANDARD IN DETERMINING ACCUSED'S RIGHTS OF DEFENSE.—In a prosecution where defendant was convicted of assault with a deadly weapon, an instruction that, before accused was justified in striking back, the facts and circumstances under which he formed the belief that he was in danger of sustaining great bodily harm "must have been such as to cause you [the jury] to believe that defendant . . . would be justified in so believing," *held* erroneous as making the judgment of the jury the standard of determining accused's right of self-defense against an attack on him.

5. ASSAULT AND BATTERY — ATTACK IN DEFENDING ONE'S SELF HELD NOT AN "ASSAULT"—INSTRUCTION CHARACTERIZING ACT OF SELF-DEFENSE AS ASSAULT HELD INCORRECT. — The act of defending one's self is never an assault, Penal Code of 1913, section 207, providing that "an assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." Hence an instruction "before a person can justify assaulting another . . . on the ground of self-defense" is subject to the criticism that it characterized the act of self-defense as an assault.

APPEAL from a judgment of the Superior Court of the County of Yuma. Fred L. Ingraham, Judge. Judgment reversed and cause remanded for new trial.

Mr. Glenn Copple and Mr. Earl Anderson, for Appellant.

The Attorney General, for the State.

ROSS, J.—The defendant was convicted of the crime of assault with a deadly weapon, upon an information charging him with an assault, with intent to commit murder, upon one Alex McBeath; the instrument used in such assault being described as a deadly weapon. He was sentenced to the state prison for a term of not less than two nor more than four years, and, being refused bail by the lower court pending the appeal, has been confined in the county jail of Yuma county since his conviction.

The evidence discloses that defendant and McBeath were neighbors, living upon adjoining farms, about two and one-half miles south of Gadsden, in Yuma county, and until the morning of the trouble were on friendly terms. This particular morning the defendant went to McBeath's home, and for almost an hour he and McBeath visited with each other, while the latter was doing chores around his yard and premises; the subject matter of their conversation being about a proposed community road that had been laid out along one side of McBeath's forty acres, its width, and, particularly, the number of feet McBeath ought to donate. It is not necessary to set out the contentions of either of the parties. It is enough to say that they suddenly became involved in a fight, McBeath using his fists and appellant using a knife, described as a Barlow, with a blade one to one and one-half inches long. As usual, each claimed the other used the first angry and insulting words and made the first demonstration of violence. Defendant admitted cutting McBeath several times during the fight, but that he did not do so until the latter had dealt him a severe blow with his fists. He claimed he had been recently overcome with heat and was not . physically able to defend himself otherwise.

The verdict of the jury on the facts is conclusive, if the trial was otherwise regular. Defendant, however, insists several prejudicial errors occurred in the course of the trial. The first is that the court gave the jury the incorrect rule, in the instruction quoted below, by which to gauge or measure defendant's right of defense against McBeath's attack. The instruction is as follows:

"Concerning self-defense, I charge you that as a matter of law no one has the right to kill another, even in self-defense, unless such killing is apparently necessary for such purpose. Before a person can justify assaulting another with the intention of taking his life on the ground of self-defense, he must, when attacked, employ all reasonable means within his power, consistent with his safety, to avoid the danger and avert the necessity of killing or inflicting great bodily harm. The law enjoins upon the defendant who pleads self-defense to show that he had no other probable means of avoiding the danger to himself, or of losing his own life, or sustaining serious bodily harm, than to act as he did in this instance. Because the defendant who invokes the plea of self-defense must not only have believed that his life was in danger or that he was in danger of sustaining some great bodily harm, but the facts and circumstances under which he formed that belief, or come to that conclusion, must have been such as *to cause you* to believe that the defendant, situated as he was at the time, would be justified in so believing."

It will be noticed that the italicized words make the judgment of the jury the standard. In other words, the defendant's right to defend himself is predicated upon what the jurors, if circumstanced as he was, would have done, or felt it necessary to do, in self-defense.

We think the correct rule is that the apprehension of danger must have been such as would have incited the fears of a reasonable person. Under the

statute (section 180, Pen. Code), where a person has reasonable grounds to apprehend a design to do him great bodily injury, and there appears imminent danger of such a design being accomplished, he may defend himself and use all necessary force to that end. He cannot, however, from bare fear of receiving such bodily injury, justify, but the circumstances must be sufficient to excite the fears of a *reasonable person,* and he must have acted under the influence of such fears alone. Section 181, Id.

This statutory rule, it is true, has reference to a case where the defender has actually taken the life of his assailant; but the rule equally applies where he only inflicts wounds or injuries, when done in his necessary defense.

The standard for determining "reasonableness" of the fear of danger before one may exercise his right of self-defense is different in different jurisdictions. In some, it is the apprehension of danger as seen by the defender himself; in others, it is viewed from the standpoint of the jury, and, in others, that of a reasonable man. 13 R. C. L. 817, § 122. We are committed to the rule last mentioned. Quoting from the last citation:

"The standpoint of the jury from the facts proved is certainly not the proper test as to whether the danger was imminent, for the defendant at the time he is defending himself cannot know what the jury do after all the facts have been proved to them. An unloaded pistol is an apparent danger to one who does not know that fact, but to a jury who do know it, it ceases to be a source of danger. While there are statements in some of the cases which would seem to make the jury the sole judges as to the existence of danger, such a rule finds no support in modern authority."

That the instruction was clearly erroneous seems well settled by the current of decisions. *State* v.

*Comisford,* 41 Nev. 175, 168 Pac. 287; *Reeves* v. *State,* 34 Tex. Cr. 483, 31 S. W. 382; *State* v. *Beckner,* 194 Mo. 281, 3 L. R. A. (N. S.) 535, 91 S. W. 892.

While in *Morgan* v. *Territory,* 7 Ariz. 224, 64 Pac. 421, the exact question we have here was not involved, it was held error to refuse to give a requested instruction, in the language of the statute, on self-defense; the matter not being covered by the general charge.

In *People* v. *Smith,* 164 Cal. 451, 129 Pac. 785, the instruction used the words "judicious" and "courageous" in place of the word "reasonable," and the court severely criticized the change, saying:

"Fundamentally, a defendant's conduct, it has been over and over said, is measured by the standard of what the ordinarily reasonable and prudent man would have done under the same circumstances."

It occurs to us that the instruction is also subject to criticism in characterizing the act of self-defense as an assault in the expression: "Before a person can justify assaulting another . . . on the ground of self-defense." The act of defending one's self is never an assault. Our statute defines the word:

"An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." Section 207, Pen. Code.

To strike back in defense of one's person, when the circumstances justify it, is not an assault, and an instruction, given upon the hypothesis that it is, is erroneous.

The defendant complains of several other errors; but, inasmuch as we find it necessary to reverse the case because of the misdirection of the jury in the above instruction, we do not deem it necessary to pass upon the other assignments, since, if there were

other errors, they will hardly occur again upon a retrial of the case.

The judgment is reversed and the cause remanded, with the instruction that defendant be granted a new trial.

McALISTER, C. J., and LYMAN, J., concur.