THOMAS WOHLFORD

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa January 16, 1894.*

1. CRIMINAL LAW—*of the intent—how proven—testimony of the defendant.* Under the statute a defendant in a criminal case has the right to testify in his own behalf, and when the intent is of the essence of the offense, or an important element constituting the offense, the defendant has the right to testify to what his intention was in the commission of the act with which he is charged.

2. While the intention with which an act is done is manifested by the circumstances connected with the perpetration of the offense, and the sound mind and discretion of the person accused, as declared by the statute, yet other evidence of intention may be resorted to either by the prosecution or the defense.

3. On the trial of one for an assault with a deadly weapon with intent to inflict a bodily injury, no considerable provocation appearing, the defendant, in testifying on his own behalf, was asked why he used the ax, which was the weapon employed, in the manner he did, and whether in using the ax he intended to do the defendant any bodily injury other than in self-defense, which the court refused to allow to be answered: *Held,* that the defendant had the right to state to the jury the intent with which the blow was struck.

4. READING LAW TO THE JURY—*in civil and criminal cases.* As the jury, in criminal cases, are, by our statute, made judges of the law, the principles of law involved in a case may be discussed in the argument to the jury, and the law, as laid down in standard authors and as contained in the reported cases of courts of last resort, may be read to the jury by either side, including the statements of fact upon which the decisions are based.

5. In civil cases a different rule prevails. In such cases it is the province of the court to instruct the jury in regard to the law applicable to the case; and it is the duty of the jury to receive and act in obedience to the law as given upon the facts of the case as they appear in evidence.

6. The fact that counsel may read the law to the jury in criminal cases does not deprive the court of the power to fully instruct the jury as to the law which should govern the case.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Stephenson county; the Hon. JAMES SHAW, Judge, presiding.

Mr. J. A. CRAIN, for the plaintiff in error.

Mr. M. T. MOLONEY, Attorney General, and Mr. OSCAR E. HEARD, for the People.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an indictment against Thomas Wohlford, for an assault with a deadly weapon with intent to inflict upon the person of Curtis Likens a bodily injury, no considerable provocation appearing. On a trial in the circuit court the defendant was found guilty, and the court imposed a fine of $250.

It appears from the evidence contained in the record, that Likens and one Evans were engaged in a quarrel, and the defendant, who was some twenty rods distant from where the two were quarreling, called out to Likens that he was a milk thief. Upon this remark being made, Likens started in a hasty and rapid manner in the direction where the defendant was standing. The latter had an ax in his possession. When Likens came to the place where the defendant was standing, abusive language passed between them, and the defendant struck Likens a severe blow on the side of the head with the flat part of the ax. The blow was a severe one, producing a serious injury.

There is a conflict in the evidence in reference to some of the facts connected with the assault, but without going over the evidence in detail, we are satisfied that the evidence before the jury fully warranted the verdict, and upon this branch of the case nothing further need be said.

The defendant, on the trial, testified in his own behalf, and his counsel, for the purpose of proving the intent of the defendant in making the assault, asked the witness the following

questions: "Now, sir, as you used the ax there, why did you use it in that way?" "As you used the ax on that occasion, what is the fact as to whether you intended to do the defendant any bodily injury, other than in self-defense?" There were general objections to these questions by the prosecution. The objections were sustained, and the defendant excepted.

Under the statute of this State a defendant has the right to testify in his own behalf, and where the intent is of the essence of the offense, or an important element constituting the offense, we think a defendant has the right to testify what his intention was in the commission of the act with which he is charged. What credit should be given to a defendant's evidence in this regard would be a matter for the consideration of the jury. In Thompson on Trials, (sec. 648,) the author, in speaking in regard to this kind of evidence, says: "This rule of evidence is of great value to persons accused of crime who may elect to testify in their own behalf, since in most crimes and misdemeanors intent is a necessary ingredient of the offense. Under this rule, the accused, when so testifying, is competent to state what the intent was with which he did this act imputed to him as a crime. * * * Where the charge is murder, and the accused sets up the so-called plea of self-defense, he is entitled to testify whether, at the moment when he committed the fatal act, he did or did not really believe that he was in danger of death or great bodily harm at the hands of the deceased. Where the charge is assault and battery with intent to ravish, he may testify that the assault was made with a different intent; and where the charge is larceny, he may testify as to what his intention was in respect of the goods at the time when they came into his possession."

In *Greer* v. *The State*, 53 Ind. 420, the Supreme Court, in discussing evidence of this character in a case where the defendant was on trial for an assault and battery with intent to commit a rape, said: "Upon the trial of the cause the defendant became a witness on his own behalf, and it was pro-

posed by his counsel to prove by him what his intention was
in the commission of the alleged assault and battery, but, on
the objection of the State, the evidence thus offered was ex-
cluded, and the defendant excepted. The intent was the gist
of the felony charged, and it devolved upon the State to make
it out. It was the right of the defendant to disprove the
alleged intent by any competent evidence. No one could
know better than the defendant what his intent was, and as
he was a competent witness, we see no reason why it was not
competent for him to testify as to his intent." See, also,
*White* v. *The State*, 53 Ind. 595.

The same rule has been established in New York. Thus,
in *Thurston* v. *Cornell*, 38 N. Y. 281, the court, in considering
the question, said: "The law is now well settled, under the
rule admitting parties to testify in their own behalf, that
where the character of the action depends upon the intent of
the party, it is competent, when that party is a witness, to
inquire of him what his intention was." See, also, *Kerrins*
v. *The People*, 60 N. Y. 228; *The State* v. *Wright*, 40 La. Ann.
589; *The State* v. *Evans*, 33 W. Va. 417.

Section 280 of our Criminal Code provides: "A criminal
offense consists in a violation of a public law, in the commis-
sion of which there shall be a union or joint operation of act
and intention, or criminal negligence." Section 281 provides:
"Intention is manifested by the circumstances connected with
the perpetration of the offense, and the sound mind and dis-
cretion of the person accused." These sections have been
referred to in support of the view that a defendant can not
testify to his intention in the commission of a crime, but the
intention must always be presumed from the circumstances,
alone, connected with the perpetration of the offense. What
the circumstances connected with the perpetration of the of-
fense are or may be, is always a matter to be proved on the
trial, and we perceive no reason why the defendant may not
testify to his intention, which will go to the jury and be con-

sidered by them in connection with the other facts and circumstances surrounding the transaction. While the intention is manifested by the circumstances connected with the perpetration of the offense, and the sound mind and discretion of the person accused, as declared by the statute, yet other evidence of intention may be resorted to either by the prosecution or defense.

But while we think the defendant had the right to state to the jury the intent with which the blow was struck, still we do not think the ruling of the court on the evidence resulted in any serious error to the defendant. In the direct examination, in giving an account of the difficulty, the defendant testified that when Likens came towards him he stepped one step back and held the ax towards him, and pushed him off to defend himself; and on cross-examination he testified: "I didn't intend to kill him." "You said, on your direct examination, that you pushed him to one side with the ax; that was all you did, was it?" "Why, he ran against it, and I held the ax out." From the foregoing it seems plain that if the court had permitted the defendant to answer the questions propounded, the intent would not have been more fully established than it was by the admitted evidence.

In the opening argument of the State's attorney to the jury, after the close of the evidence, he was permitted, against the objection of the defendant, to read law to the jury from the Illinois Reports, New York Reports, and from the reported decisions of other States, and comment on the law as read. This ruling of the court is relied upon as error. Section 431 of the Criminal Code provides that jurors in all criminal cases shall be judges of the law and the fact. In *Schnier* v. *The People*, 23 Ill. 29, it was held that the circuit court erred in refusing an instruction which read as follows: "The court instructs you that you are the judges of the law and the facts of this case, and that you are not bound by the opinion of the court as to what the law is." In *Fisher* v. *The People*, 23 Ill.

294, the same question arose, and in disposing of it the court said: "The section of the statute (referring to it) declares, in the most pointed and emphatic language, that jurors, in all cases, shall be judges of the law and the fact. This power is conferred in the most unqualified terms, and has no limit which we can assign to it. We have said in *Schnier* v. *The People*, that, being judges of the law and the fact, they are not bound by the law as given to them by the court, but can assume the responsibility of deciding, each juror for himself, what the law is. If they can say, upon their oaths, that they know the law better than the court, they have the power to do so." (See, also, *Mullinix* v. *The People*, 76 Ill. 212.) In civil cases a different rule prevails. In such cases it is the province of the court to instruct the jury in regard to the law applicable to the case, and it is the duty of the jury to receive and act in obedience to the law as given to them by the court, and apply the law thus given to the facts of the case as they appear in evidence, as held in *City of Chicago* v. *McGiven*, 78 Ill. 350, and cases there cited.

If the jury are judges of the law as well as the facts in criminal cases, as we have held they are, upon what principle can it be said that counsel, in the argument of a criminal case before a jury, can not read the law and comment upon it as applicable to the case? As the jury are by our statute made judges of the law, the principles of law involved in the case may be discussed in the argument to the jury, and we perceive no reason why the law, as laid down by standard authors and as contained in the reported cases of courts of last resort, may not be read to the jury.

Under the constitution of Indiana the jury, in criminal cases, are made the ultimate judges of law as well as of the facts. In *Start* v. *The State*, 96 Ind. 411, it was therefore held proper that counsel should be permitted to read and discuss the law in their argument to the jury, on the trial of a criminal case. The same rule was declared in *Klepfer* v. *The*

*State*, 121 Ind. 491. It is there said: "We do not think there was any misconduct on the part of the prosecuting attorney. This being a criminal prosecution he had the right to read from law books, and especially from the reported cases of this court, and to state his own conclusions as to what was proven by the evidence, in the light of the decided cases from which he read, and, as we understand the record, he did not step over this line."

Thompson on Trials, (sec. 945,) says: "If the right exists to argue the law of the case to the jury, it must follow that the right exists to read books of the law to them as authority and for illustration, in like manner as counsel would do in arguing the law to the court. This right has accordingly been upheld in those jurisdictions where the right to argue the law to the jury exists." In section 995 the author also says: "In the former chapter the circumstances under which books of the law may be read to the jury in argument were considered, from which it will appear that the reading of books of the law stands on this peculiar footing: that whereas juries are, in criminal trials and in actions for libel, judges of the law as well as of the fact, it necessarily follows that counsel have the right to argue the law to them, so that they do not commit the indecency of arguing against the law as laid down by the court, in the making of which argument they must necessarily have the right to read to the jury extracts from books of the law." See, also, *The State* v. *Verry*, 36 Kan. 416.

In some of the States, where the jury are not made judges of the law by statute, it has been held to be within the discretion of the c‿ur.t whether counsel should read to the jury statutory or c‿‿n law from the books. *Commonwealth* v. *Hill*, 145 Mass. 305; *The State* v. *Brooks*, 92 Mo. 542; *Legg* v. *Drake*, 1 Ohio St. 287.

It is also complained that the State's attorney read from a statement of facts in at least some of the cases which he read to the jury. We perceive no error in this. If it was proper

Opinion of the Court.

to read from the opinion of the court it was likewise proper to read from the statement of facts, as in many cases it would be difficult for either the court or the jury to get a clear understanding of the law, as declared in the opinion of the court, unless the facts upon which the opinion was predicated were understood. In *The State* v. *Hoyt*, 46 Conn. 338, the same question was presented, and it was there held that the statement of facts upon which a decision is predicated might be read. It is there said: "Counsel for accused asked permission to read, as a part of his argument to the jury, *The State* v. *Anderson*, 43 Conn. 514. He was permitted to read from it as far as questions of law are therein determined, but was not permitted to read, in connection therewith, the statement of the facts of that case therein contained. * * * The jury having statutory power to determine the law of his case, the accused had the right to read to them the determination of this court upon points affecting him, in such manner as to give them the most complete knowledge of its precise scope and meaning, and we think that would be best accomplished by presenting the opinion in its entirety. Of course the facts, to a greater or less degree, illustrate the statement of the law, and in some paragraphs the two are so closely interwoven that a separation would weaken, and perhaps destroy, the force of the latter." The fact, however, that counsel may read the law to the jury does not deprive the court of the power to fully instruct the jury as to the law which should govern the case.

We perceive no substantial error in the record, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*